DRAKE vs. REED.

1. Where an agreement was entered into by three persons, whereby it was declared, that C contracted as the party of the first part, and D & N, as parties of the second part; it was held, that D & N were partners in respect to such agreement; so as to be jointly liable to C, for his proportion of profits, arising under the agreement, declared on settlement.

2. Where on a settlement in such case, a balance was declared as due to C, under the agreement; and D endorsed such fact on the back of the agreement, stating it to be due to C, from N & D, and in N's hands, and subscribed it "N & D"—held that C's assent, by the words " very well," to the understanding that the said balance was in N's hands, did not bar his claim, against D's liability as one of the partners.

3. One, having a joint claim or demand against two, can not be held to release the liability of either, by a mere verbal acquiescence, (*unaccompanied by a positive assent, on sufficient consideration,*) in an arrangement by which it is agreed between the two liable, that one shall discharge it.

This was a process of garnishment, issued upon a judgment, rendered in Madison Circuit Court, against John Carney. The garnishment was executed upon Drake, the plaintiff in error, and required him, (with one John Neely,) to appear at the Spring term, 1827, of said Court, and answer on oath, what he was indebted to said Carney, or what effects, &c.

On the 9th day of May, 1827, the said garnishee, Drake appeared before the Court, and answered upon oath, that James Neely and himself, as partners, were indebted to said Carney, in a sum above the amount of three hundred dollars: that he had not paid it himself; and did not know whether said Neely had paid it or not.

On the ensuing day Drake appeared, and prayed the Court, to answer further, which being granted,

he stated, that on the 21st day of February, 1823, he entered into partnership with said Carney and Neely, for the purpose of freighting cotton—that while the said copartnership existed, the net profits amounted to the sum of twelve hundred dollars—making the sum of four hundred dollars, to each partner: that on settlement, the said Drake obtained the amount accruing to himself; that the sum of three hundred and thirty dollars, was left in the hands of Neely, as due and owing to Carney: that Carney did not claim any thing of the said Drake, but looked alone to Neely for the amount aforesaid.

Drake, the garnishee, in his answer, exhibited the articles of agreement between Carney and Neely and himself; by which it appeared, that Carney, *of the one part*, and Neely & Drake, *of the other part,* undertook to freight cotton, the said Carney to furnish two boats; and Neely & Drake to provide two, also; that each partner was to pay an equal part of the expense; Carney to bear one third of the profit and loss; and Neely & Drake to be the acting partners, and furnish freight.

Reed having made affidavit, as required by statute, an issue was formed between the parties; and a verdict was rendered in favor of the plaintiff: and a new trial was subsequently granted, which resulted in the like judgment.

On the trial of the last issue, (the articles of agreement being in evidence,) it was proved, that on the 24th of May, 1825, a settlement was made between the parties, of the matters of said agreement, and an account stated thereon; by which a balance was shown to be due to Carney, from Neely & Drake, of

4 s & p.                        25

three hundred and thirty dollars : that on the back of said agreement, a witness who had stated the account, endorsed the words following, to wit—" after a final settlement, there, appears to be a balance of three hundred and thirty dollars, due from Neely & Drake, to John Carney—the amount of which is in the hands of James Neely. 24th May, 1825."— Which memorandum was signed by Drake, thus, " Neely & Drake." That at the time of this proceeding, it was generally understood, that the partnership was dissolved : and that Drake then stated, that he was liable to Carney for the balance aforesaid, but that as Neely had the money, he wished all means used to get it from him. That when informed of this arrangement, Carney replied, " very well," and seemed satisfied therewith. That Neely was then, and for some time thereafter, solvent.

The Court below, in reference to this proof, was requested to charge the jury, that if a settlement had been effected between the parties, at the time of the dissolution of the copartnership ; and the arrangement, that Neely should pay the amount due to Carney, made known and assented to by the latter, then Drake was discharged. This the Court refused ; but informed the jury, that nothing under the facts stated, would discharge Drake, but an express agreement on valuable consideration. Further, that as said articles between Carney and Neely & Drake, provided, that Carney was to have one third part of the profits, and to sustain one third of the loss of the business ; and as Neely & Drake were to perform acts, under them, distinct from those to be done by Carney—the legal effect of them was to bind Neely & Drake, jointly, as partners. And that if on settlement, there

was a deficit in Neely's hands, due to Carney, Neely & Drake were jointly liable, as partners, to Carney, for it: and that the fact of signing the statement, on the back of the agreement, by Drake, in the name of Neely and Drake, confirmed the fact of the co-partnership liability. That Drake's first answer in the proceedings, also confirmed this supposition: and that if the jury found these facts, Reed occupied Carney's situation. Also, that Carney's verbal acquiescence in the arrangement, that Neely should pay him his balance, did not exempt Drake from liability.

These opinions of the Court being excepted to, a writ of error removed the cause here.

*Huchison & Craighead*, for the plaintiff in error—*Hopkins, contra.*

SAFFOLD, J.—Drake, the plaintiff in error, having been summoned as garnishee, at the instance of Reed, to answer what he was indebted to Carney, who was debtor to the latter; Drake appeared in Court, in obedience to the garnishment, and answered, on oath, that himself and James Neely, as partners, owed said Carney upwards of three hundred dollars, that he had not paid it himself, and he did not know whether Neely had paid it or not. On a subsequent day of the same term, Drake re-appeared in Court, and, having obtained leave, made a further statement, on oath, which, in effect, was, that in February, 1823, he entered into partnership with Carney and Neely, by written articles, which were exhibited, for the purpose of freighting cotton to New Orleans—that the enterprise having been commenced

and concluded, the net profits appeared to be about twelve hundred dollars, making four hundred dollars to each partner ; on settlement, of this amount, he, Drake, obtained for himself, four hundred dollars— leaving the residue in the hands of the other two, the larger portion thereof in the hands of Neely.— That afterwards, and before the service of the garnishment, on an inspection of the partnership papers, there appeared in the hands of Neely, about three hundred dollars, of the portion of the profits belonging to Carney, who on that account, took that amount on Neely—that he, Drake, having received only his proportion of the profits, owed Carney nothing ; nor did the latter ever claim of him any part of the sum left in the hands of Neely ; and that his then full statement of the whole transaction, had been rendered necessary, from the hurried manner in which he had been summoned and required to answer ; and want of time for reflection.

The article of agreement, referred to, purports to have been entered into, between Carney, of the one part, and Neely & Drake of the other ; and contains the following stipulations—" The said Carney agrees to furnish two complete boats, each partner to pay equal expense of the boats, in order to freight cotton; and the said Neely & Drake agree to furnish two, in like good order, of which said Carney is to bear one third part of the profit and loss, of the four boats, bound to New Orleans, each to furnish a bill of all expenses—the said Neely & Drake to be the acting partners, and furnish freight, if it can be procured," &c. It was signed and sealed separately by the three.

Afterwards, affidavit having been made by Reed,

of his belief of the garnishee's indebtedness, issue was joined on the fact, according to statute. On the trial of this issue, verdict and judgment were given for Reed, for four hundred and forty-four dollars and fifty cents.

A bill of exceptions, taken by the garnishee, in the course of the trial, states the evidence, on each side, and the instructions of the Court, to the jury, thereupon—of which, it is sufficient to notice, that the plaintiff introduced a witness, (Hardie,) who deposed, that, in May, 1825, he, at the request of Carney & Drake, stated the account, shewing a balance due from Neely & Drake, on the 24th May, 1824, of of three hundred and thirty dollars; and that, on the back of which statement, he, (Hardie,) wrote as follows—"After a final settlement, there appears to be a balance of three hundred and thirty dollars, due from Neely & Drake to John Carney—the amount of which is in the hands of James Neely. 24th May, 1825;" and which was subscribed, by said Drake, "Neely & Drake." At that time the witness believed the partnership to have been dissolved, and the fact notorious. He also deposed, that Drake admitted himself bound to pay this debt; but said, it was properly due from Neely, who had received the money; and expressed his wish, that all means should be used to recover it from Neely.

Then, the said Neely being introduced as a witness, he deposed to the same effect, respecting the balance of the accounts; but, that it had been agreed between himself and Drake, as the latter had only received his part, that he, Drake, alone, should be responsible to Carney for the amount; that shortly thereafter, he informed Carney of this agreement,

who replied, " Very well," and then, and since, so far as he knew, appeared satisfied; that he, Neely, was then solvent.

This being, in substance, the evidence offered, the Court instructed the jury, that the legal effect of the article entered into, between the parties, was that of an undertaking between Neely & Drake, jointly, or as partners, of the one part, with Carney of the other; and, if, on settlement, there was a deficit in Neely's hands, due to Carney, Neely & Drake were jointly, or as partners, liable to Carney, for it: and, if it were true, that Drake assented to, and signed the statement of the accounts made by Hardie, as mentioned, his doing so, tended to explain and confirm the partnership liability of the two, as understood by Drake: also, that if he had at other times, on oath or otherwise, acknowledged the liability, this, likewise, went in confirmation of the fact.

The garnishee, by his counsel, then moved the Court to instruct the jury, that if they should believe, from the testimony, that, in 1823, at the dissolution of the partnership, there was a settlement between Neely and Drake, which was communicated to Carney; that he assented to it, and, thereby, consented to let the residue, found due to him, remain in Neely's hands, and that he would look to Neely alone, for it; and that this occurred before Drake's signature to the paper of May, 1825, as before stated, and prior to the service of the present garnishment—then Drake was discharged, and the issue should be found in his favor.

This charge the Court refused to give, and instructed the jury, that nothing under the facts stated, would discharge Drake, but an express agreement, for a va-

luable consideration. To all which, the defendant excepted.

The several assignments of error, present, for revision, the opinion of the Court, on the points, stated.

We fully concur in the opinion of the Circuit judge, that, the legal effect of the article of agreement, between the parties, was to constitute Neely & Drake one of the joint contracting parties, and Carney, alone, the other. The language of the instrument, that it was made and concluded, " between John Carney of the one part, and James Neely and James Drake of the other part "—and the stipulation, that the former, alone, was to furnish two boats, and the others, jointly, to furnish two—clearly indicate that intention.

Other parts of the agreement, it is true, would have been equally appropriate to a different association: one, in which each of the three persons would constitute an equal and independent partner. In this light, might be viewed the stipulations, that each party should pay equal expense of the boats, in order to freight cotton; and that Carney was to share one third part of the profit of the four boats.

But, at the same time, it is to be observed, that each of these covenants is but a necessary consequence of the other. The contract that Carney was to receive only one third of the profits, explains the reason for his proportion of the loss being the same. And if we were at liberty to scan the equity of their agreement, we might presume that the personal services of Neely & Drake, who were to be the active partners, in procuring freight, &c., were supposed to compensate Carney for furnishing half the number of boats to be used; or, it may be, that his two boats

were to be of a quality, compared with the others, to make his capital so vested, but one third of the whole. But, be that as it may, the clauses of the contract, last referred to, are applicable to contracts of either kind: there is no novelty in a contract of partnership, allowing to one of the two parties, two thirds of the interest, and the residue to the other, as seems to have been the case, here.

As there is no apportionment of the interest, between Neely & Drake, they were jointly entitled to two thirds of the whole. Under all these stipulations, and the express designation of the parties, by the instrument, it would seem to admit of no other interpretation, than, that Carney constituted one party, and Neely & Drake, jointly, the other. A consequence of this relation between the three, would necessarily be, to render Neely & Drake jointly responsible, to Carney for any balance which might be found due him, from the concern. Whether the two former were thus liable strictly, as partners to each other, or as constituting, together, one partner, with Carney as the other, is immaterial—the effect was the same.

The subsequent statement of the account of loss and profit, by Hardie, at the request of Neely & Drake, in which they were treated as one party, and Carney as the other: the admission thereby, of their joint liability to him for his balance, though in the hands of Neely, alone, with Drake's assent and signature to the same, might well be taken as an explanation or confirmation of the character of the association, as understood by Drake. His admissions of the same, at other times, on oath or otherwise, might farther tend to the same result.

The most difficult enquiry relates to the supposed parol consent, by Carney, to rely alone on Drake, for payment.    I question not the competency of the parties to have made a subsequent parol agreement, for Drake's discharge; but to give it effect, as such, it must have had Carney's assent, and the other constituents of a legal contract.    To test the validity of the agreement, the rules of evidence and the consideration, must be taken into view.    The earliest and latest evidence of Drake's understanding of the contract between the three persons, is in writing— the original article of February, 1823—and the statement of the account in May, 1825, assented to and signed by him, the latter in the name of Neely and himself—both admitting his responsibility for any deficit by Neely.    The parol discharge contended for, is supposed to have arisen during the intermediate period, and no new consideration for it, is pretended. It is however urged, with some plausibility, that as all three had embarked in an adventure of profit and loss, and though a profit had been made, Drake had received only the proportion to which he was entitled, and Carney's profit was in the hands of Neely; justice required that the latter should pay it, and that Carney had consented to rely on him alone; also, that Drake ought to be viewed in the favorable light of a surety, and this acquiescence in the proposition for his discharge, and the failure to make the money out of Neely, while solvent, were circumstances constituting a legal discharge of Drake's responsibility.— But it is shown that Drake did not thus view his situation, in 1825, when he signed the acknowledgment of his liability: nor in 1827, when he made his first

4 s. & p.                    26

answer as garnishee. Nor can the parol understanding, contended for, prevail, without allowing it the virtue to vary the original agreement, and contradict the subsequent acknowledgment of liability, both in writing. Parol evidence being of inferior grade and dignity, must yield to the influence of written testimony, created at the same time or subsequently—(see the case of *Brooks* and *Brown* vs. *Maltbie*, decided at this term, and the authorities in the dissenting opinion.) To vary an existing valid contract, it must be cancelled, or the latter, intended to produce this effect, must possess, as before remarked, the legal requisites of an agreement—something more than the casual reply of "very well," to a proposition made to a creditor, that he should look to another, for his debt. The law has not, on account of any subsequent equity between themselves, placed one, of several partners or others jointly indebted, on the footing of principal and sureties. The latter stand on grounds peculiar to themselves; for the reason, that they have no interest in the subject of the contract. But could Drake be viewed as a surety, there was no evidence that Carney ever yielded the dominion of his claim, or his right of action upon it, for the shortest time. The evidence for the garnishee only tended to show, not any agreement on a consideration, but Carney's mere naked assent or undertaking, to look alone to Neely—therefore, neither the law respecting sureties, nor the doctrine of mistake of law or fact, can strictly apply to this case.

It is deemed unnecessary particularly to notice, any of the various authorities cited in argument on either side, except the case of *Smith* vs. *Rodgers*,[a] which is strongly in point. The facts of that case

[a] 17 Johns. 340.

were, that Rodgers & Bement, partners in trade, were
indebted to the plaintiff for goods—that B. informed
the plaintiff, by letter, that they had dissolved, and
that he, B., had assumed the debt due to the plain-
tiff, and of the payment of which they might rest
assured.    To which the plaintiff replied, " we ob-
serve your partnership is dissolved, and that you have
assumed our debt, which we are satisfied with."—
That B. afterwards paid part of the debt, and liqui-
dated the account and gave the plaintiff his note, for
the balance ; and the plaintiff gave him a receipt for
the note, " when paid to be placed to the credit of
Rodgers & Bement.    B. continued in business for
more than twelve months afterwards, and then be-
came insolvent ; not having yet been sued on the
note.    Afterwards, under these circumstances, Rodg-
ers, as well as Bement, was held responsible for the
original demand, on the note being delivered up to
be cancelled.    There, the ground of defence is be-
lieved to have been stronger, than in this case, but
was ruled insufficient—nor does it appear that the
rule of decision in other Courts, has been different,
in analagous cases.    Then, according to this doctrine,
some other consideration, and an agreement thereon,
was necessary to effect the discharge contended for ;
and if the language of the charge was more latitu-
dinous, it was so far in the nature of abstract instruc-
tion, and did not affect the merits of the case.

Under these views, we are unanimous in the opin-
ion, that the judgment must be affirmed.